Nov. Term,
1853.

DEVELIN
v.
RIGGSBEE.

DEVELIN v. RIGGSBEE.

The release of a parol contract need not be under seal.

The term "marriage contract" is applied to the public ceremony of marriage and to the prior contract to marry which that ceremony implies.

A female at the age of eighteen years is, in this state, as to the power to enter into a marriage contract, an adult.

A female over eighteen and under twenty-one years of age, may, in this state, make a valid release of a contract to marry.

Saturday,
December 3.

ERROR to the *Franklin* Circuit Court.

STUART, J.—*Lydia Riggsbee*, by her next friend, sued *Develin* for breach of marriage contract. The declaration contains three counts: 1. A promise to marry when requested, and refusal. 2. A promise to marry on request, but that he married another. And, 3. To marry in a reasonable time, and refusal.

*Develin* filed four pleas. First, the general issue, which was afterwards withdrawn. The second and fourth pleas set up a release from Miss *Riggsbee* before suit, and after she had arrived at the age of eighteen years. The demurrers filed to these pleas were sustained. The third is the only plea leading to an issue of fact. This plea is similar to the second and fourth, with the additional allegation that the release was made with the consent of her father and next friend.

Trial by jury. Verdict and judgment for the defendant in error for 750 dollars.

The first question is on the validity of the second and fourth pleas.

The demurrers were special, assigning for cause that the pleas set up a release as a bar to the action, without making profert of it. If a release always imports a seal, then the special demurrer was well taken. 1 Chitty Pl. 366.—1 Saund. R. 9, note d. The usual understanding of the word release is, that it is under seal; yet, in some cases, a discharge or release is as valid without a seal as with it. 1 Serg. and Rawle 312.—*Delacroix* v. *Bulkley*, 13 Wend.

71.—*Dearborn* v. *Cross*, 7 Cowen 48.—*Lattimore* v. *Harsen*, 14 Johns. R. 330.—1 Cowen 122.—9 *id*. 46. There is some reason for a seal when it is intended to operate as a release of a deed or other sealed instrument; for then the releasing instrument should be of equal dignity with that released. But the reason ceases as to parol contracts. A verbal release is of equal dignity with a verbal promise, and should be regarded as of equal force and validity.

Such is the case at bar. Neither of the pleas demurred to, as we understand them, allege a release under seal, in terms. The second plea calls it her certain release in writing.

The fourth plea does not allege it to be in writing even. It simply avers, that, in consideration of the notes, she did then and there release and discharge, &c. There is nothing, therefore, in the pleas to which the demurrer for want of profert was applicable. For from the wording of the pleas and the nature of the promise alleged to be released, it is not to be presumed that the release was under seal. The special demurrer to the second and fourth pleas was, therefore, not well taken, and should have been overruled.

But as these demurrers had also the effect of a general demurrer, if the matter pleaded were insufficient to bar the action, the ruling of the Court was not erroneous. The defence set up in these pleas resolves itself into a single question: Can a female, over the age of eighteen and under twenty-one years, for a valuable consideration, viz., 200 dollars, make a valid release of a marriage contract? If she can, then the pleas are a bar to the action brought by her on such contract.

The general current of authorities is, that the acts of an infant are voidable only. A warrant of attorney to confess judgment is an exception—that is void. 6 Cowen 393. There are other exceptions not necessary to be noticed. Nor, admitting the release in question to be voidable, will we stop to inquire when it was competent for Miss *Riggsbee* to avoid it. In *Roof* v. *Stafford*, the Court

lay down the rule, that the the time of avoiding the exe-
cuted ·contracts of an infant is when he comes of age.
7 Cowen 179.   And the decision, to that extent, is not
disturbed in the Court of errors.   9 Cowen 627.   Per-
haps, therefore, the disaffirmance, by bringing the suit
while she was yet a minor, was premature; but of this
we give no opinion.

The Courts, in their anxiety to adhere rigidly to the
rules in favor of infancy, should not be blind to the sub-
ject-matter of the suit.   It is not to be denied that a
young lady of the ripe age of eighteen or upwards, does
not, in point of fact, need the aid of the courts to enable
her to make and unmake marriage contracts.   Infancy,
on such a subject, is in name only, and not in reality.
The courts may well be excused from over-nice distinc-
tions in favor of mere nominal infancy.

So it seems to be regarded by the revised statutes of
1843.   Thus, section ten of the marriage act reads—

"If either of the persons intending to marry is a male
under the age of twenty-one years, or a female under the
age of eighteen years, and shall not have had a former
wife or husband, the clerk shall not issue a license to
such person without the consent of the parent or guardian
having the custody of such minor, if there be any in this
state competent to act."

The twelfth section speaks of the lawful age to marry
without the consent of the parent or guardian, and pro-
vides substantially that the license may issue after the
above ages without such consent.

It is not necessary to notice the meaning to be attached
to "marriage contract."   These terms are applied both
to the public ceremony of marriage, and to the prior con-
tract to marry which that ceremony implies.   Hence, the
suit here brought is for breach of marriage contract.

The policy of the law in the protection of infants is
wise and humane, and should be enforced.   But it seems,
from the foregoing sections, that the legislature justly
concluded that as to the marriage contract, the rigor of
the rule might be somewhat relaxed in favor of the fe-

male. Accordingly a discrimination of three years is made. The female at eighteen is deemed as competent to judge for herself in contracting matrimony, as the male at the age of twenty-one. At these ages, and for that purpose, the statute puts them upon an equality: they may both contract marriage without consent of parents or guardians. As to that contract, the female at eighteen is, therefore, in this state, an adult. This view is further corroborated by the act in relation to apprentices, where the same discrimination is observed. . R. S. 1843, p. 615. The male is to be bound till he is twenty-one and the female till she is eighteen years of age.

In *England*, it seems that the full age of male and female is twenty-one years. At this age the female may dispose of herself. 1 Black. Comm. 463. But this, says the commentator, is merely arbitrary, and fixed at different times in different countries. Thus, in *Naples*, the female is at full age at eighteen. *Id.* 464. We cannot find that the *English* statutes have changed the law in this respect since the time of *Blackstone*. So that no light is to be gleaned from that quarter. Nor have we been able to find any *American* case in point. We therefore place the decision upon the obvious policy flowing from a fair construction of our own statute.

If, at the age of eighteen, the female be an adult as to the marriage contract, it necessarily follows that she is competent to release such contract. Had the statute proceeded a step further, and declared that at the age of eighteen she might contract in relation to personal property, her power to buy, sell, receipt for, release, and do every thing incident to such contracts, could not be seriously doubted. Suppose, under such statute, she accordingly sell her gold watch on credit, her power to receive the price, and receipt to or release the purchaser, is necessarily implied in the power to sell. So with the marriage contract. We can see no good reason to distinguish the one case from the other. The power to contract being conferred, the incidents properly belonging to it follow.

We, therefore, conclude that a release of *Develin*, after

Nov. Term, 1853.

Miss *Riggsbee* had attained the age of eighteen years, was a good bar to an action on a verbal promise of marriage. We thus confine it strictly to the case at bar.

Should the statute so expounded be found to operate injuriously, the legislature have only to impose such further restrictions as in their wisdom may be deemed expedient.

This view of the case renders it unnecessary to notice the instructions given and refused. It also leaves the settlement between the parties in full force—Miss *Riggsbee* being entitled to the notes given her by *Develin* in that settlement.

*Per Curiam.*—The judgment is reversed with costs. Cause remanded, &c.

*S. W. Parker* and *J. B. Sleith*, for the plaintiff.

*J. Ryman*, for the defendant.